UNITED STATES, Appellee

v.

TOMMY ARIOLA, Sergeant, U. S. Air Force, Appellant

2 USCMA 637, 10 CMR 135

No. 1849

Decided June 19, 1953

Col Kenneth B. Chase, USAF, Lt Col Harry T. Dykman, USAF, and Maj John J. Ensley, USAF, for Appellant.

Col David D. Porter, USAF, Lt Col Harold Anderson, USAF, and Capt Giles J. McCarthy, USAF, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

Upon his conviction by general court-martial of fraudulent enlistment in violation of Article of War 54, 10 USC § 1526, and making a false claim in violation of Article 132, Uniform Code of Military Justice, 50 USC § 726, the accused was sentenced to a dishonorable discharge, reduction to the grade of private, confinement at hard labor for three years and total forfeitures. The convening authority disapproved the findings relating to fraudulent enlistment, reduced the amount involved in the false claim, and mitigated the term of confinement to one year, suspending execution of the dishonorable discharge until the accused's release from confinement or until completion of appellate review, whichever is the later date.

We granted the accused's petition for review limiting our consideration to the following issues:

"1. Whether the instruction that an element of the offense was that the claim was 'false or fraudulent' was correct.

"2. Whether the instructions of the law officer were sufficient."

638

That portion of Article 132 alleged to have been violated provides as follows:

"Any person subject to this Code—
(1) who, knowing it to be false or fraudulent—

(A) makes any claim against the United States or any officer thereof; . . .

. . . . . . . .

shall, upon conviction, be punished as a court-martial may direct."

The specification, based on this portion of the Article, alleged that the accused:

". . . did, . . . on or about 21 August 1951, make a claim against the United States by presenting a certificate for increased rental allowance to . . . an officer of the United States, duly authorized to approve such claims, in the amount of seven hundred thirty-nine dollars and fifty cents ($739.50) for rental allowance for a dependent wife from 1 February 1951, to 24 July 1951, which claim was false and fraudulent, in that the dependent wife of . . . [the accused] was a member of the Armed Forces on active duty, and was then known by the said . . . [accused] to be false and fraudulent."

This specification conforms to sample specification No. 106, Appendix 6c, Manual for Courts-Martial, United States, 1951. No contention is made that it is insufficient nor could such contention be given serious consideration. See United States v. Steele (No. 943), 2 USCMA 379, 9 CMR 9, decided April 14, 1953. The sole distinction between the specification and the article is that the former alleges that the claim was "false *and* fraudulent" while the latter proscribes claims which are "false *or* fraudulent." Had the instructions followed the language of the specification no problem would be presented, for, if any distinction exists between the terms "false" and "fraudulent," by requiring a showing of both, the law officer would have placed a greater obligation upon the prosecution than was required by Article 132, supra. Any error thereby committed would have benefited the accused and he would be in no position to complain. However, the law officer instructed █ the court that the essential elements of the offense charged were:

". . . First, that the accused made a certain claim against the United States, as alleged; second, that the claim was false or fraudulent in the particulars specified; third, that when the accused made the claim he knew that it was false or fraudulent in such particulars; and fourth, the amount involved, as alleged. . . ."

The defense contends that since the 1928, 1949, and 1951 editions of the Manual for Courts-Martial, contain a model specification form permitting the allegation of a "false" claim, a "fraudulent" claim or a claim which is "false and fraudulent," three separate offenses are intended to be encompassed. Consequently, by alleging a "false and fraudulent" claim the prosecution was required to prove that offense and the law officer was under an obligation to instruct thereon. By instructing in the alternative, the law officer permitted a showing of either of the two other offenses to constitute proof of the third.

There is merit in this contention only if three separate offenses are proscribed by the pertinent provisions of Article 132. Congress defines the substantive crimes it intends to proscribe, while The President, acting under the authority of Article 36a of the Code, 50 USC § 611, is limited to prescribing the procedures, including modes of proof, applicable before military tribunals. The functions of each are distinctly separate. Consequently, if Congress has proscribed but one offense in Article 132 (1) (A) The President cannot enlarge that Article to include three offenses by providing three forms of alleging a violation of the Article.

We are persuaded that but one offense was defined by the pertinent provisions of Article 132 and but one offense is described in the specification form alluded to. The use of the three separate forms of pleading were intended merely as alternative means of describing the same offense. This conclusion is required by a consideration

of the definitions of the words "false" and "fraudulent" as they are found in Article 132.

The definition of false as used in various statutes is not uniformly consistent. As used in some tax statutes it has been held to mean merely incorrect and not intentionally or fraudulently erroneous. Seaman v. Bowers, 297 Fed. 371, 373 (CA 2d Cir); Eliot Nat. Bank v. Gill, 218 Fed 600 (CA 1st Cir). The Supreme Court of Ohio in Fouts v. State, 113 Ohio St. 450, 149 NE 551, 554, has declared:

". . . the word 'false' has two distinct and well-recognized meanings: (1) intentionally or knowingly or negligently untrue; (2) untrue by mistake, accident or honestly after the exercise of reasonable care. United States v. Ninety-Nine Diamonds, 139 F 961, 966, 72 CCA 9, 2 LRA (NS) 185.

" 'In the more important uses, in jurisprudence, of "false" and "falsely," they usually import somewhat more than the vernacular sense of "erroneous" or "untrue." They are oftenest used to characterize a wrongful or criminal act, such as involves an error or untruth, intentionally or knowingly put forward. A thing is called "false" when it is done, or made, with knowledge, actual or constructive, that it is untrue or illegal, or is said to be done falsely when the meaning is that the party is in fault for its error.' Ratterman, Treasurer v. Ingalls, 48 Ohio St. 468, 483, 28 NE 168, 169; Hatcher v. Dunn, 102 Iowa 411, 71 NW 343, 36 LRA 689; Putnam v. Osgood, 51 NH 192, 206; State v. Smith, 63 Vt 201, 22 A 604; Clapp v. Mass. Benefit Ass'n., 146 Mass 519, 16 NE 433; Franklin Ins. Co. v. Culver, 6 Ind 137; Cohn v. Neeves, 40 Wis 393.

" 'Falsely,' as used in an instruction stating that it is for the jury to determine whether defendant falsely represented certain facts, will be construed to mean something more than 'mistakenly' or 'untruly,' and cannot be construed otherwise than to mean something designedly untrue or deceitful, and as involving an intention to perpetrate some fraud. . . ."

In State v. Smith, 63 Vt 201, 22 Atl 604, 606, the Supreme Court of Vermont considered the sufficiency of a perjury indictment from which the words "falsely" and "as he then and there well knew" had been omitted. Holding the omission of the latter phrase immaterial, the court declared:

". . . The question thus presented is whether the falsity of the testimony is sufficiently charged by the assignment of perjury, without using the words 'as he then and there well knew.' It is one thing to say that a statement is not in accordance with the truth, and another thing to say that the matter has been designedly misstated. In one case we indicate the nature of the thing stated; in the other we characterize the act of the person in stating it. A statement may be false in the sense of being untrue, and the person who made the statement not have spoken falsely in the sense of having intentionally misrepresented. Words denoting falsity are used in both of the meanings indicated, and some confusion has doubtless arisen in consequence. *But when 'falsely' is applied to the intentional act of a responsible being it seems properly to imply a purpose to deceive. . . ."* [Emphasis supplied.]

To the same effect the Court of Appeals for the Second Circuit in United States v. Achtner, 144 F 2d 49, 52, declared:

". . . the representation of citizenship must still be made to a person having some right to inquire or adequate reason for ascertaining a defendant's citizenship; it is not to be assumed that so severe a penalty is intended for words spoken as a mere boast or jest or to stop the prying of some busybody, and the use of the words 'knowingly' and 'falsely' implies otherwise. Thus, it is said that the word 'falsely,' particularly in a criminal statute, suggests something more than a mere untruth and includes 'perfidiously' or 'treacherously,' Dombroski v. Metropolitan Life Ins. Co., 126 NJL 545, 19 A 2d 678, 680,

20 A2d 441; 35 CJS, Falsely, pp 626, 627, or 'with intent to defraud,' as has been held with respect to the counterfeiting laws, United States v. Otey, CC Ore, 31 F 68. . . ."

The term "fraudulent" consistently connotes the false representation of a material fact made with knowledge of its falsity and with the intent to deceive another. Cahill v. Curtiss-Wright Corporation, 57 F Supp 614, 616. The accused does not contest this meaning of fraudulent. The sole basis of his assignment of error is that the two are not synonymous.

Upon the reasoning of the authorities above cited, "false," when used in conjunction with "knowing" in Article 132(1), supra, is the equivalent of "fraudulent," and the use of both terms was resorted to out of an abundance of caution. Therefore, instructions requiring a finding that the claim was "false or fraudulent" were sufficient.

## II

Turning to the second issue, we note that the law officer's instructions quoted above followed precisely ▮▮▮▮▮ the elements of proof of this offense as outlined in paragraph 211a, Manual for Courts-Martial, United States, 1951. We note further that these elements are in complete accord with the definition of a false claim contained in Article 132(1)(A). Normally, these factors would be sufficient to justify holding the instructions to be adequate. However, the appellant contends that the court should have been instructed that an honest and reasonable mistake in law, or that an honest and reasonable mistake as to the legal effect of known facts, could be considered by the court for the purpose of indicating the absence of such a state of mind. We find no merit in this contention, for if the accused was honestly mistaken in his representations, the claim was neither false nor fraudulent. The court by its finding clearly indicated the contrary. See United States v. Quisenberry (No. 329), 1 USCMA 670, 5 CMR 98, decided September 9, 1952. The instruction "that when the accused made the claim he knew that it was false or fraudulent in such particulars," described to the court the entire issue of this case on the factual basis. The meaning of each word is perfectly clear and would seem impossible of misconception. However, if a possibility of misunderstanding did exist under the circumstances of the case, the burden of requesting clarification or elaboration rested upon the defense at the trial. In the absence of such a request the issue cannot now be raised for the first time. United States v. Felton (No. 1639), 2 USCMA 630, 10 CMR 128, decided June 12, 1953.

The second issue is answered in the affirmative. The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.